## COMMONWEALTH vs. JAMES HOWELL.

No. 00-P-1222.

Bristol. December 11, 2001. - April 3, 2003.

Present: LAURENCE, DREBEN, & TRAINOR, JJ.

*Indecent Assault and Battery. Evidence,* Fresh complaint, Corroborative evidence. *Witness,* Corroboration. *Practice, Criminal,* Instructions to jury, Double jeopardy. *Constitutional Law,* Double jeopardy.

At the trial of an indictment alleging indecent assault and battery on a child under fourteen years of age, fresh complaint evidence was on the borderline of admissibility, where the complainant was an intelligent preteen of considerable self-assurance; where there was no evidence that the defendant ever threatened, coerced, or intimidated the complainant; where the defendant's control over the complainant was minimal at best; and where the complaint was not spontaneous [719-721]; however, where the judge failed to give contemporaneous instructions on the use of fresh complaint evidence before two fresh complaint witnesses testified, gave an inadequate instruction during a break in a third fresh complaint witness's testimony, and gave incomplete final instructions to the jury, the risk of prejudice arising from the multiple fresh complaint witnesses was not alleviated [721-724], and when combined with the improper admission of the complainant's self-corroborating testimony via a videotaped interview, the combination of errors required reversal [724-726].

A criminal trial held after two mistrials was not barred on double jeopardy grounds, where the defendant assented to the declaration of a mistrial after jury deadlock in the first trial and moved for a mistrial after jury deadlock in the second trial, where the two deadlocked juries did not raise any presumption that the Commonwealth had failed to produce sufficient evidence of his guilt, and where the defendant failed to demonstrate that a witness's testimony in the first two trials was either distorted or reckless. [726-727]

INDICTMENT found and returned in the Superior Court Department on February 11, 1994.

After two declarations of mistrial, a motion to dismiss was heard by *Raymond J. Brassard,* J., and the case was tried before him.

*David L. Larsen* for the defendant.

*M. Catherine Huddleson*, Special Assistant District Attorney, for the Commonwealth.

TRAINOR, J. The defendant, James Howell, was indicted on February 11, 1994, for indecent assault and battery on a child under fourteen of years of age "on divers dates and at divers times" between June 1, 1991 and December 31, 1991. G. L. c. 265, § 13B. He appeals from a conviction based on two incidents encompassed by the indictment. Concluding that the improper use of fresh complaint testimony and other errors deprived the defendant of a fair trial, we reverse the judgment.

1. *Facts and procedural history.* At the time relevant to prosecution of this case, the defendant worked as a counselor at the Hayden-McFadden Elementary School in New Bedford. The complainant, John,[1] was referred to the defendant at the end of his fifth grade school year, in late spring of 1991.

Then ten years old, John lived with his mother, her boyfriend, and John's younger half-brother. John witnessed drug and alcohol abuse as well as domestic violence in the home. At the time he was referred for counseling, John, although a good student, had been showing increasingly aggressive and defiant behavior at home and at school. The defendant met with John approximately six times during the summer of 1991. The incidents of abuse alleged by John occurred during that spring and summer.

The defendant continued to meet with John on a weekly basis during the 1991-1992 school year. The sessions focused on John's emotional responses to his home life and, in particular, his defiance of authority figures. In a session on April 2, 1992, the defendant confronted John about another student's report that John was involved with, or selling, drugs. John denied the allegation, swore at the defendant, and left his office. Thereafter, John refused to resume counseling. The defendant met once or twice with John following that incident but "got absolutely nowhere" due to John's hostility. John completed sixth grade and did not meet with the defendant again.

That fall (1992), John entered the seventh grade at a local junior high school, where he began to get into trouble for a

---

[1] A pseudonym.

number of instances of misbehavior. In December, John received a three-day suspension for fighting and was sent home. At his grandmother's house, John's mother and grandmother questioned him for a lengthy period of time about his behavior and the suspension. Both women were angry and upset; the discussion included yelling and screaming. According to John, his mother and grandmother told him that they were going to "put [him] back in counseling." John responded that he would not go back. He first refused to explain but, after continued questioning, told his mother and grandmother that the defendant had touched him. He would not elaborate, except to name locations where the incidents had taken place.

The focus of the discussion then turned from John's behavior and suspension to his allegations against the defendant. Shortly thereafter, John and his mother's boyfriend drove together to the Bristol County district attorney's office, where they met with investigator Sherrie Nobre. John and his mother's boyfriend did most of the talking; John told Nobre that the defendant had touched him, but provided no details other than the location of at least one of the incidents. Nobre arranged for John to return one week later for a "SAIN" (Sexual Abuse Intervention Network) interview.[2] On December 16, 1992, the SAIN director interviewed John while Nobre and a Department of Social Services agent observed from behind a one-way mirror. Following the SAIN interview, Nobre arranged for John to return the next day for a videotaped interview. In these interviews, as well as in his trial testimony, John made a number of allegations against the defendant.

The defendant was charged with the commission of the crime "on divers dates and at divers times." The verdict slip specified three different incidents for the jury's consideration. The first allegedly occurred in the defendant's office at the end of John's fifth grade year. The second allegedly occurred during the summer, following John's fifth grade year, in a motel pool. The

---

[2]A SAIN interview, observed by representatives from several authorities (i.e., Department of Social Services, police department, etc.) behind a one-way mirror, spares a child complainant from undergoing repeated questioning regarding sensitive matters related to ascertaining whether sexual abuse has occurred.

third allegedly occurred that same summer in a cemetery near John's house. In addition to these three incidents for which the defendant was tried, John described other alleged incidents in his SAIN interview, in the videotaped interview, and during his trial testimony. These additional allegations included skinny-dipping at a State park on Cape Cod, another motel pool incident, the defendant's alleged request that John shower with another young male, and another incident in the defendant's office at the school.

The defendant was tried twice in December of 1996; a mistrial was declared in each instance due to the inability of the jury to reach a verdict. A third trial was held between March 20, 1997, and April 2, 1997. At the close of the Commonwealth's case, the defendant moved for a required finding of not guilty, which was denied. The jury found the defendant guilty on the basis of the swimming pool and cemetery incidents.

On appeal, the defendant argues that 1) the testimony of investigator Nobre concerning the SAIN interview and the videotape of John's interview, to which objections were timely made, were erroneously admitted as fresh complaint testimony; 2) although no specific request was made, the trial court improperly failed to give contemporaneous fresh complaint instructions to the jury regarding the testimony of John's mother and grandmother; 3) the prosecutor impermissibly vouched for the credibility of one of its witnesses, Nobre, during closing argument; 4) defense counsel was ineffective for failing to object to the absence of fresh complaint instructions with respect to John's mother and grandmother, and to the prosecutor's improper vouching; and 5) double jeopardy barred the third trial of the defendant.

2. *Fresh complaint: timeliness.* Fresh complaint evidence is admissible for the limited purpose of corroborating the complainant's testimony and is "corroborative only if it shows that the complainant seasonably complained of the attack." *Commonwealth* v. *Fleury*, 417 Mass. 810, 813 (1994), quoting from *Commonwealth* v. *Licata*, 412 Mass. 654, 660 (1992). There is no absolute rule as to the time within which a sexual assault complainant must complain of the assault for that

complaint to be admissible. *Commonwealth* v. *Montanino*, 409
Mass. 500, 508 (1991). The applicable test is "whether the
[complainant's] actions were reasonable in the particular
circumstances." *Commonwealth* v. *Swain*, 36 Mass. App. Ct.
433, 439 (1994), quoting from *Commonwealth* v. *McDonough*,
400 Mass. 639, 652 (1987). In cases involving children, great
promptness has not been required; our courts have acknowledged
that analysis in such cases should be flexible, with due
consideration of factors that reasonably might cause a child to
refrain from disclosing abuse to third parties. See *Com-
monwealth* v. *Amirault*, 404 Mass. 221, 229 (1989). Factors
relevant to the determination whether a child's report of sexual
abuse was reasonably prompt include (in addition to the length
of delay itself): the child's age; the relationship between the
child and the defendant; whether the defendant held a position
of trust in the child's life; whether the defendant threatened or
coerced the child; and, "where the defendant played some
supervisory role in the complainant's life, the length of time
that the complainant was out from under the defendant's
control." *Commonwealth* v. *Fleury*, 417 Mass. at 814-815 (cita-
tions omitted).

The incidents alleged by John took place in the spring and
summer, 1991, when John was ten years old. John's reporting
of the incidents occurred in December, 1992, at age twelve.
This disclosure was fifteen months after the last incident al-
leged[3] and eight months after the end of the counseling relation-
ship in April, 1992. While this time span falls within the outer
limits of decided cases, we conclude that John's complaints
were "on the borderline of admissibility." *Commonwealth* v.
*Swain*, 36 Mass. App. Ct. at 441.

First, with respect to age, although not yet an adolescent,
John was an intelligent preteen of considerable self-assurance
(sufficient, in fact, unilaterally to terminate counseling with the
defendant at age eleven). Second, there was no evidence that
the defendant ever threatened, coerced, or intimidated John.
Compare *Commonwealth* v. *Comtois*, 399 Mass. 668, 674
(1987); *Commonwealth* v. *Amirault*, 404 Mass. at 229. Third,
the defendant's control over John was minimal at best, as

---

[3]This assumes that the last event occurred in August, 1991.

evidenced by John's termination of counseling and resistance to the defendant's efforts to resume it. Even assuming the defendant's position as a school counselor is considered supervisory, John was out from under such "control" for eight months prior to reporting the incidents, a considerable period of time. Compare *Commonwealth* v. *King*, 387 Mass. 464, 473 (1982) (child victim reported abuse one month after living apart from defendant); *Commonwealth* v. *Dockham*, 405 Mass. 618, 626 (1989) (eleven days after child victim out of defendant's control). Finally, John's complaint was not spontaneous, but rather occurred during the course of a grilling administered to him by his mother and grandmother on the subject of his own misbehavior. This is not a case in which the disclosure "is triggered by an event, or a change in circumstances, that invests the disclosure with spontaneity and plausibility." *Commonwealth* v. *Traynor*, 40 Mass. App. Ct. 527, 532 (1996). Compare *Commonwealth* v. *Dockham*, 405 Mass. at 626 (victim's disclosure of abuse precipitated by his departure from home of abuser); *Commonwealth* v. *Fleury*, 417 Mass. at 815 (disclosure triggered by abuser's return to victim's home); *Commonwealth* v. *Hyatt*, 31 Mass. App. Ct. 488, 490 (1991) (victim's disclosure triggered by boyfriend's attempt to kiss her); *Commonwealth* v. *McKinnon*, 35 Mass. App. Ct. 398, 404 (1993) (disclosure triggered by onset of menstruation). The circumstances of John's revelation, by comparison, "make it seem less spontaneous and more in the nature of the calculated use of the complaint as a weapon in the course of a vitriolic quarrel." *Commonwealth* v. *Traynor*, 40 Mass. App. Ct. at 532.

Viewed separately, these factors do not render the fresh complaint testimony to have been impermissibly admitted. They must be taken together, however, and considered with the other infirmities of the case.

3. *Fresh complaint: witnesses and instructions.* "[R]epetitive testimony from several witnesses regarding the details of the complaint may lend undue credibility to the complainant's testimony." *Commonwealth* v. *Aspen*, 53 Mass. App. Ct. 259, 268 (2001), quoting from *Commonwealth* v. *Lorenzetti*, 48 Mass. App. Ct. 37, 42 (1999). While there is no per se rule regarding how many fresh complaint witnesses may testify, *ibid.*, "it is

plain that the greater the number of fresh complaint witnesses, the greater the risk that fresh complaint testimony will be taken by the jury as substantive evidence that the alleged crimes were actually committed." *Commonwealth* v. *Brouillard*, 40 Mass. App. Ct. 448, 456-457 (1996). To counter this risk, judges have been advised, although not required, to instruct the jury as fresh complaint testimony is admitted, and again during the final charge, that such testimony may not be used as substantive evidence. *Commonwealth* v. *Trowbridge*, 419 Mass. 750, 761 (1995). *Commonwealth* v. *Lorenzetti*, 48 Mass. App. Ct. at 39-40. Accordingly, analysis of a "piling on" claim turns not so much on the number of fresh complaint witnesses, but rather on whether the risk of prejudice to the defendant by repetitive testimony was alleviated by sufficient limiting instructions. Compare, e.g., *Commonwealth* v. *Lamontagne*, 42 Mass. App. Ct. 213, 219-220 (1997) (affirmance where there were five fresh complaint witnesses; judge gave proper limiting instructions before each witness and in final charge), with *Commonwealth* v. *Trowbridge*, 419 Mass. at 760-762 (reversal where four fresh complaint witnesses testified and there were no contemporaneous instructions).

In this case, four fresh complaint witnesses testified: John's mother, his grandmother, investigator Nobre, and, in effect, the videotaped interview of John. The prejudice to the defendant accrued not from the number of witnesses, but rather from the lack of sufficient instruction to the jury regarding their fresh complaint testimony. No fresh complaint instruction preceded the testimony of either John's mother or his grandmother.[4] Moreover, no fresh complaint instruction was given before Nobre's detailed testimony about John's unrecorded SAIN interview, which included recitation of incidents at the office, the cemetery, and the pool, as well as the additional incidents at the State park (skinny-dipping), and another separate pool incident. An instruction was given *after* Nobre's testimony was

---

[4]While there was no specific request from defense counsel that such instructions be given as to these two witnesses, we are not persuaded by the Commonwealth's argument that defense counsel's failure to request them was a tactical decision.

completed for the day,[5] prior to showing the videotape to the jury. This instruction purported to apply to both Nobre's testimony and the videotape.[6] However, the judge's brief and contextually unclear reference to Nobre's testimony was inadequate to the task of instructing the jury on the limited use of Nobre's fresh complaint testimony.[7] Given the lengthy and detailed nature of Nobre's testimony, this deficiency was significant.

The judge's final instructions to the jury regarding fresh complaint were substantively complete. However, they referenced only "[John]'s out-of-court statements to Ms. Nobre, either in person to her or recorded on a videotape recording with her." Assuming this was an adequate reference to Nobre's testimony, this instruction was still incomplete because it did not reference the earlier fresh complaint testimony of John's mother and grandmother. Although the testimony of the mother and the grandmother regarding John's complaint was not detailed, it nevertheless added to the drumbeat of accusation against the defendant. As the jury had not been given contemporaneous fresh complaint instructions regarding the testimony of the mother and grandmother, this omission was also significant.

"Limiting instructions at the time testimony is offered and again at the end of trial are the primary antidotes to the possibility of improper use" of fresh complaint testimony. *Commonwealth* v. *Williams*, 56 Mass. App. Ct. 337, 345 (2002). In this case, the risk of prejudice arising from the multiple fresh complaint witnesses was not alleviated by adequate limiting

[5]Nobre's testimony continued on the next day of trial. No fresh complaint instruction was given that day prior to the resumption of her testimony.

[6]The instruction included the following statement: "[John]'s out-of-court statements to this witness Ms. Nobre both on the 16th of December, 1992, as to which the witness has given testimony, and to this witness on the 17th of December with respect to the videotape recording, those out-of-court statements by [John] to this witness reporting that [John] was sexually assaulted cannot be considered by you the jury unless you first determine that [John's] statements were reasonably prompt in light of all the circumstances."

[7]Moreover, the record suggests that the jurors' attention was not given over to the judge at the time he gave these instructions. The transcript of the videotape had been distributed and the jurors had begun to read it. Consequently, the judge had to ask for their attention twice during his instruction.

instructions. Although the number of fresh complaint witnesses was not excessive per se, the combined defects in instruction allowed their testimony to lend undue credibility to John's testimony, see *Commonwealth* v. *Licata*, 412 Mass. at 659-660, and contributed to the risk that the jury would "use the details of the fresh complaints as substantive evidence that the crime actually occurred." *Commonwealth* v. *Lavalley*, 410 Mass. 641, 646 (1991). Compare *Commonwealth* v. *Lamontagne*, 42 Mass. App. Ct. at 220 (proper limiting instruction given before each fresh complaint witness and reiterated in final instructions) with *Commonwealth* v. *Lorenzetti*, 48 Mass. App. Ct. at 40-41 (although contemporaneous instructions were deficient, judge's final charge properly informed jury of limited use of fresh complaint evidence and witnesses to whom that instruction applied).

As we noted in *Commonwealth* v. *Lorenzetti*, reversals in fresh complaint cases tend not to rest on a simple lack of contemporaneous instruction, or on improper "piling on" of witnesses alone. See *id.* at 41-42. Rather, they involve multiple prejudicial factors or infirmities. See *ibid.*, and cases discussed therein. This is a case of multiple infirmities, as it involves 1) evidence of borderline freshness; 2) multiple fresh complaint witnesses with little other evidence; 3) lack of contemporaneous or final instruction with regard to two witnesses; 4) lack of adequate contemporaneous instruction regarding a third; and 5) as discussed *infra*, error in allowing self-corroboration by the complainant through the showing of a videotaped interview. While none of these factors alone might serve as the basis for reversal, their cumulative effect must be evaluated to determine whether reversal is required.

4. *Self-corroboration.* "[A] fresh complaint witness may testify both to the fact of the complaint and the details of the complaint as expressed by the complainant." *Commonwealth* v. *Peters*, 429 Mass. 22, 27 (1999). See *Commonwealth* v. *Washburn*, 55 Mass. App. Ct. 493, 497 (2002). The *complainant*, however, "may testify *only* to the fact that a fresh complaint was made and to whom it was made"; he or she "should not be allowed to testify about the details of the complaint" (emphasis original). *Commonwealth* v. *Peters*, 429 Mass. at 30. That is,

the complainant may not self-corroborate. See *id.* at 28; *Commonwealth* v. *Quincy Q.*, 434 Mass. 859, 869 (2001); *Commonwealth* v. *Washburn*, 55 Mass. App. Ct. at 497.

In *Commonwealth* v. *Quincy Q.*, *supra* at 867-869 (decided after trial in this case), a videotape of the complainant describing the details of the sexual assault was held inadmissible as evidence of fresh complaint because it improperly allowed the complainant to self-corroborate. Improper admission of such self-corroborating testimony may not constitute prejudicial error if it is merely cumulative or reiterative of other evidence properly admitted as fresh complaint, or if there are "other reasons as well that establish lack of any prejudice." *Commonwealth* v. *Peters*, 429 Mass. at 30-31.

In this case, however, the improper admission of John's self-corroborating testimony was not accompanied by any mitigating factors. To the contrary, this error, combined with the borderline admissibility of John's complaints to his mother, grandmother, and Nobre; the multiple fresh complaint witnesses; and inadequate instructions on fresh complaint testimony augments the concern created by the erroneous admission of the videotaped testimony. Not only was the videotape introduced, a transcript of it was distributed to the jurors. The jurors asked to see the videotape during their deliberations. The erroneously admitted videotape was, apparently, significant to them.

The errors created a particular threat of prejudice because the nature of the evidence against the defendant was "far from overwhelming." *Commonwealth* v. *Trowbridge*, 419 Mass. at 762. The Commonwealth's case consisted of John's description of the events alleged and repetition of these accusations by several other witnesses. See *ibid.* (Commonwealth's case, lacking physical evidence and containing evidence that raised questions as to complainant's veracity, relied "on a significant amount of fresh complaint testimony.") See also *Commonwealth* v. *Mazzone*, 55 Mass. App. Ct. 345, 353 (2002). The case, in other words, depended entirely on the credibility of the complainant improperly bolstered by self-corroboration and "borderline" fresh complaint testimony given with inadequate limiting instructions. *Commonwealth* v. *Brouillard*, 40 Mass. App. Ct. at 457. The combination of errors requires reversal.

*Commonwealth* v. *Mazzone, supra* at 353. Additionally, when "[w]e examine [the erroneously admitted evidence] in the context of the entire case against the defendant to determine whether its admission prejudiced the defendant in some significant way," we conclude that it did. *Commonwealth* v. *Esteves*, 429 Mass. 636, 639 (1999), quoting from *Commonwealth* v. *Cyr*, 425 Mass. 89, 95 (1997). See *Commonwealth* v. *Cruz*, 53 Mass. App. Ct. 393, 407 (2001).

5. *Double jeopardy and other claims.* The defendant contends that his third trial was barred on double jeopardy grounds, because, inter alia, 1) there was no "manifest necessity" for declaration of the first two mistrials, and he opposed such declarations; 2) the two deadlocked juries raise a presumption that the Commonwealth failed to produce sufficient evidence of his guilt; and 3) he would have been acquitted in the first two trials but for Nobre's reckless and distorted testimony.

These arguments are without merit. First, a deadlocked jury is "the 'prototypical example' of a manifest necessity for a judge to declare a mistrial." *Commonwealth* v. *Ellis*, 432 Mass. 746, 751 (2000), quoting from *Commonwealth* v. *Andrews*, 403 Mass. 441, 448-449 (1988). Contrary to his assertion, the defendant assented to the declaration of a mistrial after jury deadlock in the first trial (as did the Commonwealth), and moved for a mistrial after jury deadlock in the second trial. No principle of double jeopardy bars retrial under such circumstances. See *Commonwealth* v. *Andrews*, 403 Mass. at 447-448, quoting from *Oregon* v. *Kennedy*, 456 U.S. 667, 683 (1982) (Stevens, J. concurring) ("defendant's motion for, or consent to, a mistrial removes any double jeopardy bar to reprosecution," absent prosecutorial overreaching or harassment).

The defendant moved for a required finding of not guilty in both the first and second trials. The motions were denied. Prior to the third trial, the defendant filed a motion to dismiss the indictment in light of insufficient evidence of guilt. The motion was denied after hearing by the trial judge, and the defendant filed a petition in the Supreme Judicial Court, in accordance with the provisions set forth in G. L. c. 211, § 3, appealing from the denial of the motion. A single justice of that court concluded that the evidence was "clearly sufficient to warrant a

finding by the jury under the [*Commonwealth* v. *Latimore*, 378 Mass. 671, 676-678 (1979),] standard of the defendant's guilt beyond a reasonable doubt" and denied the relief requested in the petition. Commonwealth *vs.* Howell, SJ-97-0156 (Mar. 19, 1997). The defendant does not now argue or make any showing that there was insufficient evidence at the second trial.

The defendant's remaining claims as to double jeopardy are without merit. The defendant has failed to demonstrate that Nobre's testimony was either distorted or reckless in the first two trials.

Because we conclude that the conviction must be reversed, we need not address the issues of ineffective assistance of counsel and prosecutorial vouching in the closing argument. See *Commonwealth* v. *Trowbridge*, 419 Mass. at 762 n.7.

*Judgment reversed.*

*Verdict set aside.*