Commonwealth vs. Jeffrey J. Medina.

No. 04-P-1014.

Worcester. April 14, 2005. - October 7, 2005.

Present: Perretta, Cypher, & Graham, JJ.

*Rape. Indecent Assault and Battery. Practice, Criminal,* Double jeopardy, Trial of indictments together, Instructions to jury, Conduct of judge, Presence of defendant, Comment by prosecutor, Sentence, Assistance of counsel. *Constitutional Law,* Double jeopardy, Sentence, Assistance of counsel. *Evidence,* Fresh complaint.

Principles of double jeopardy did not bar the retrial of a criminal defendant after a mistrial caused by a deadlocked jury. [713-715]

A Superior Court judge did not abuse her discretion in denying a criminal defendant's motion to try together indictments from two different counties. [715-716]

At the trial of indictments charging multiple counts of rape of a child and indecent assault and battery, the judge's decision not to instruct on specific unanimity was not error, and therefore provided no basis on which to claim ineffective assistance of counsel, where the victim's testimony, which the jury found credible, established that she had been the victim of crimes arising from a repetitive pattern of sexual abuse by the defendant, spanning more than two years, and not from discrete episodes or incidents of particular acts. [716-718]

At the trial of indictments charging multiple counts of rape of a child and indecent assault and battery, the judge was not required to give an instruction informing the jury that there was an absence of fresh complaint evidence. [718-719]

The record of a criminal trial did not support the defendant's contentions that constitutional error arose from gestures made by the trial judge that allegedly were suggestive of her bias against him, from the allegedly admonishing tone in which the judge addressed defense counsel at certain points at trial, or from the judge's undoubtedly harmless ex parte communication with the jury. [719-721]

There was no merit to a criminal defendant's claim of error regarding the prosecutor's line of inquiry at trial. [721]

Sentences imposed on a criminal defendant convicted of rape of a child, in violation of G. L. c. 265, § 23, and indecent assault and battery on a child under the age of fourteen, in violation of G. L. c. 265, § 13B, were lawful and within the statutory limits. [721-722]

A motion judge's conclusion that defense counsel at a criminal trial did not render ineffective assistance for allegedly refusing to honor the defendant's

request to testify was supported by the record and not clearly erroneous. [722-724]

INDICTMENTS found and returned in the Superior Court Department on November 14, 1997.

The cases were tried before *Tina S. Page*, J., and a motion for a new trial, filed on March 17, 2000, was heard by *Timothy S. Hillman*, J.

*Janet H. Pumphrey* for the defendant.

*David W. Waterfall*, Assistant District Attorney, for the Commonwealth.

GRAHAM, J. On November 14, 1997, a Worcester County grand jury returned eight indictments against the defendant, Jeffrey J. Medina, charging him with three counts of rape of a child (G. L. c. 265, § 23) and five counts of indecent assault and battery of a child under the age of fourteen (G. L. c. 265, § 13B), second and subsequent offense. The victim identified in the indictments was the defendant's stepdaughter. The indictments charged the defendant with committing the crimes on "diverse dates" between January 1, 1991, and April 12, 1993, while he and his stepdaughter were living in Worcester County.

Three days later, on November 17, 1997, another grand jury, in Franklin County, also returned indictments against the defendant, charging him with two counts of rape and two counts of indecent assault and battery of a child under the age of fourteen against the same victim, at different locations in that county.

On April 5, 1999, more than sixteen months after the indictments had issued, and just one day shy of a trial scheduled to begin in Worcester County, the defendant filed a motion in the Superior Court in Franklin County, seeking an order to transfer the pending Franklin County case to Worcester County, and to join and consolidate the cases for a single trial. See Mass.R. Crim.P. 9, 378 Mass. 859 (1979); Mass.R.Crim.P. 37, 378 Mass. 914 (1979). A judge denied the motion. The defendant's trial in Worcester County went forward the next day (April 6, 1999).

*Trial proceedings.* The defendant was tried before a jury in

Worcester County, but a mistrial was declared on April 9, 1999, because of a jury deadlock.[1] On April 14, 1999, trial commenced in Franklin County on the indictments that had issued in that county. A jury there acquitted the defendant on all charges.[2]

On May 19, 1999, the defendant was retried in Worcester County on the Worcester indictments. A jury convicted the defendant on all charges. Postverdict, a bench trial was held with the defendant's assent, at which the judge found that the assault and battery convictions were the defendant's second and subsequent offenses. The trial judge imposed a sentence of concurrent life terms for two of the rape convictions, and ordered a twenty-year term of probation for the other rape conviction. For each of the five indecent assault and battery convictions, the judge imposed concurrent sentences of twenty to thirty years, to be served from and after the expiration of the two concurrent life terms on the rape convictions.

The defendant moved for a new trial. See Mass.R.Crim.P. 30(b), 378 Mass. 900 (1979). His claims of error were based on (a) double jeopardy and the denial of his request for a joint trial; (b) the judge's charge and certain evidentiary rulings; (c) ineffective assistance of counsel; (d) an alleged infringement of his right to be present at a critical trial stage; (e) the allegedly excessive punishment imposed for his convictions; and (f) a line of allegedly improper questioning by the prosecutor. The defendant also claimed that the judge's demeanor during defense counsel's closing argument prejudiced his case in the eyes of the jury.

At the request of the defendant, the trial judge recused herself from acting on his rule 30 motion. Another judge conducted an evidentiary hearing and, based upon detailed written findings, denied the rule 30 motion.

The defendant's appeal from the order denying him a new

---

[1] A jury deadlock is the " 'prototypical example' of a manifest necessity for a judge to declare a mistrial." *Commonwealth* v. *Howell*, 57 Mass. App. Ct. 716, 726 (2003), quoting from *Commonwealth* v. *Ellis*, 432 Mass. 746, 751 (2000). No challenge was made to the declaration of a mistrial.

[2] The docket sheet for the Franklin County case reflects the fact that the defendant made an oral motion for a required finding; the trial judge denied it.

trial has been consolidated with his direct appeal. We affirm both the judgments of conviction and the denial of relief under rule 30.

1. *Facts.* The Commonwealth presented the following witnesses at the retrial in Worcester County: the victim, who was then nineteen years old[3]; her seventeen year old brother; her mother; her maternal grandmother; Russ Aukstikalnis, who boarded with the victim and her family; and Douglas Brown, a police officer in the town of Montague, who interviewed the victim and her brother after the abuse was reported.

The victim testified that the defendant, who was married to the victim's mother,[4] began sexually abusing her when she lived with him, her mother, and her younger brother in an apartment on Washington Street in Gardner. There, the defendant touched her breasts and vagina with his hands, put his penis on her vagina,[5] and touched her vagina with his tongue. At all times when these acts took place, in the living room or the bedroom that the defendant shared with the victim's mother, the mother was working. The defendant would make her go into his bedroom where "he would open [her] legs and lick [her] all over and kiss [her]." He warned the victim not to tell anyone about these events; otherwise, he said, "he would take [her] someplace where [she] couldn't tell anybody" and would "hurt" her. The victim also testified that the defendant would make her perform oral sex on him, explaining that he "would hold [her] head so [she] couldn't move and he'd pull [her] hair." The victim also recalled that prior to a contemplated family trip to Montana the defendant took her on a camp outing at which he "touched [her] with his hands on [her] breast and [her] vagina."

The defendant's abuse of the victim continued after the family moved to an apartment on Chestnut Street in Gardner. She stated that the defendant would take her into the bedroom and

[3]The victim's date of birth is April 13, 1980. She was between ten and twelve years old when the conduct in question occurred in Worcester County.

[4]The victim's biological father, after divorcing the victim's mother, had moved to Ohio, where he remarried.

[5]The victim testified the defendant touched her vagina with his penis on more than five occasions. She explained that he "would lay on top of me" and "rub around on me."

have vaginal sex with her. In addition, the defendant continued to force her to perform oral sex on him which, she said, happened "a lot."

Aukstikalnis testified he had witnessed the victim, while clad in her nightshirt, enter the defendant's bedroom late at night. He saw this happen more than once, and always when the mother was not at home.[6] The victim's brother also testified he had observed the defendant, at the Chestnut Street apartment, touching the victim's vagina and her breasts with his penis. The brother also recalled seeing the defendant kneeling over the victim, with his penis on her vagina, while she lay naked on her back in the doorway area between the defendant's bedroom and the living room. The brother did not speak of this until 1997 because he was afraid of the defendant.

The abuse ended abruptly in 1992 when the victim's mother, upon returning home at about 1:30 A.M. from her job, discovered her daughter and the defendant in bed together. The victim appeared to be sleeping but the defendant was sitting upright, smoking a cigarette. The mother confronted him, angrily asking what had been going on. He did not answer. After removing her daughter from the bedroom, the mother had a sharp exchange with the defendant before going to sleep on a living room sofa.

The following day, the victim denied to her mother that anything happened with the defendant. Later, Aukstikalnis told the mother that he had observed the victim going into the defendant's bedroom at night. The mother then quit her job, removed her children from the Gardner home, and took up residence in a shelter.[7]

In November of 1996, after a Thanksgiving visit with her father and stepmother, the victim moved to Ohio to live with them. She attended school in Ohio, making the honor roll, and got along well with her new family. In April of 1997, the father told the victim that her mother was again living with the de-

---

[6]During 1991 and 1992, the victim's mother worked first at a nursing facility and then at a McDonald's food outlet, where (at both jobs) her shift began at 2:00 P.M. or 3:00 P.M. and concluded at 11:00 P.M. or later. While she worked, the defendant stayed at home and watched over the victim and her brother. He was neither employed nor actively looking for a job at this time.

[7]In 1995, the mother and the defendant were divorced.

fendant. Shortly thereafter, the victim locked herself in her bedroom and broke some of her personal belongings, including a mirror. This led to an argument between the victim and her father; the victim hit her father and pushed her pregnant stepmother.

The police were summoned. Before they arrived, the victim told her father about her abuse by the defendant. She later appeared before a judge who directed her to attend counseling. The abuse was reported to authorities in the Commonwealth, and as a result, the defendant was indicted in both Franklin and Worcester counties for the crimes allegedly committed in each.

2. *Double jeopardy.* The defendant did not raise any claim based on double jeopardy prior to the retrial of the Worcester County case. Though the constitutional claim had been waived, see *Commonwealth* v. *Spear*, 43 Mass. App. Ct. 583, 587 (1997),[8] it was included in his new trial motion, and was addressed by the judge who acted on that motion. The judge determined that there was no merit to the defendant's double jeopardy claim. We agree.

The protection afforded by the Fifth Amendment to the United States Constitution, which prohibits the Federal government from subjecting a defendant to more than one prosecution for the same offense, is applicable to the States by way of the due process clause of the Fourteenth Amendment. See *Commonwealth* v. *Woods*, 414 Mass. 343, 346 (1993); *Commonwealth* v. *Ellis*, 432 Mass. 746, 751 (2000); *Rendon-Alvarez* v. *Commonwealth*, 437 Mass. 40, 40 n.1 (2002); *Commonwealth* v. *Gonzalez*, 437 Mass. 276, 281 n.3 (2002), cert. denied, 538 U.S. 962 (2003). Protection from double jeopardy is part of the statutory and common law in the Commonwealth.[9] *Commonwealth* v. *Woods, supra.*

---

[8] Even though the right to be protected from double jeopardy is fundamental to our legal system, "that status alone has not put beyond the pale the idea that it may be waived by failure to raise it at a lower level." *Commonwealth* v. *Norman*, 27 Mass. App. Ct. 82, 87, *S.C.*, 406 Mass. 1001 (1989). "[T]he proper time for determining the validity of a defense of double jeopardy is prior to the proceeding that would offend the protected rights." *Commonwealth* v. *Spear*, 43 Mass. App. Ct. at 586. See *Lydon* v. *Commonwealth*, 381 Mass. 356, 360 n.7 & 367, cert. denied, 449 U.S. 1065 (1980); *Commonwealth* v. *Green*, 52 Mass. App. Ct. 98, 102 (2001). Compare *Rendon-Alvarez* v. *Commonwealth*, 437 Mass. 40, 41 (2002), where a defendant made a timely motion.

[9] See General Laws c. 263, § 7 ("A person shall not be held to answer on a

This fundamental idea, which "is deeply ingrained" in our system of jurisprudence, is that the government "with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Green* v. *United States*, 355 U.S. 184, 187-188 (1957).

The Commonwealth's common law and the Fifth Amendment to the United States Constitution shield a defendant against double jeopardy in three situations: "a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." *Mahoney* v. *Commonwealth*, 415 Mass. 278, 283 (1993). See *Commonwealth* v. *LaCaprucia*, 429 Mass. 440, 445 (1999); *Commonwealth* v. *Bloom*, 53 Mass. App. Ct. 476, 477 (2001).

The present situation does not implicate any such scenario. The defendant was retried in Worcester County based on charged offenses alleged to have occurred only in that county. No verdict of acquittal was ever returned for the defendant as to those particular acts.

The defendant's trial in Franklin County did yield an acquittal. That prosecution, however, involved acts allegedly committed by him at times and locations distinct from those alleged in the charges brought to trial in Worcester County. No double jeopardy claim can be made out in this situation. See *Commonwealth* v. *Woods*, 414 Mass. at 346.

In essence, the defendant contends the Commonwealth had two bites at the apple in Worcester County, allowing it to remedy weaknesses in its first presentation, and to fortify its case in the retrial. However, the recorded testimony of witnesses who had been called by the Commonwealth before the grand jury in Worcester County or at the initial trial there in fact supplied the defendant with much ammunition for his cross-examination of

second indictment or complaint for a crime of which he has been acquitted upon the facts and merits; but he may plead such acquittal in bar of any subsequent prosecution for the same crime . . . .")

(or impeachment of) those same witnesses in the retrial. This was in no small measure useful to the defendant, particularly since the case largely turned on the jury's assessment of the credibility of the various witnesses called by the Commonwealth.

In sum, there had been an agreed-to declaration of a mistrial due to a deadlocked jury; thus, out of a manifest necessity, with the defendant's acquiescence, a retrial followed, and, as such, no principle of double jeopardy barred the Commonwealth from retrying the defendant for offenses allegedly committed by him in Worcester County.[10] See *Commonwealth* v. *Andrews*, 403 Mass. 441, 448-449 (1988); *Commonwealth* v. *Howell*, 57 Mass. App. Ct. 716, 726 (2003). Our conclusion here renders unnecessary further consideration of the defendant's related claim that defense counsel was ineffective for failing to seek dismissal of the case on double jeopardy grounds.

3. *Joint trial.* The defendant also claims error from the denial of his motion to have the Franklin County indictments tried in Worcester.[11] The indictments then pending in both Worcester and Franklin counties involved similar charges of rape and indecent assault and battery against the same child victim. The Commonwealth did not press for a joint trial on the basis that the charged offenses were "related" within the meaning of Mass.R. Crim.P. 9, 378 Mass. 859 (1979). See *Commonwealth* v. *Jacobs*, 52 Mass. App. Ct. 38, 40-41 (2001). Nor is there any indication the Commonwealth gave its approval to the request made by the defendant, a necessary precondition to the entering of such relief. See Mass.R.Crim.P. 37(b)(2), 378 Mass. 915 (1979).[12]

Rule 9 allows for "residual discretion in the interpretation

[10]Before retrial, the defendant did not press a challenge to the Commonwealth's evidence as being insufficient to obtain a conviction. On appeal he points to this circumstance as supportive of his claim of ineffective assistance of counsel. His trial counsel was not ineffective for failing to do so for the simple reason that such a motion had no chance of success. The case, in both the initial proceeding and the retrial, largely turned on the jury's assessment of the credibility of the complainant, not the weight of the Commonwealth's evidence, which was sufficient to meet all elements of the charged crimes.

[11]The defendant argues that the improper denial of his motion for joinder and transfer of the Franklin County indictments resulted in his being subject to double jeopardy.

[12]Rule 37(b)(2) provides in pertinent part: "A judge, upon motion of a

and application of" its terms by the trial judge, *Commonwealth* v. *Jacobs, supra* at 41, who must determine whether or not the joinder of "related offenses" (or "unrelated" offenses), for purposes of a single trial, is in the "best interests of justice." Mass.R.Crim.P. 9(a)(4). The same is true of rule 37(b)(2): on a motion made pursuant to rule 9(a)(3) or (4), a judge "may" order such procedural relief, as was requested here by the defendant, on the condition that the prosecutor for each case assents in writing to the same, and that the factors mentioned in the rule (i.e., convenience of the court, parties, and witnesses) point in favor of doing so.

In denying the motion for a joint trial, the judge did not furnish a written statement of his reasons. We must assume the judge determined that a joint trial was not in the best interests of justice, especially considering that the Worcester trial was scheduled to commence the following day. Such a conclusion was clearly within the bounds of the judge's considerable discretion. See *Commonwealth* v. *Delaney*, 425 Mass. 587, 593 (1997), cert. denied, 522 U.S. 1058 (1998); *Commonwealth* v. *Allison*, 434 Mass. 670, 679 (2001).

4. *Jury charge.* a. *Specific unanimity.* The defendant argues that the judge erred in refusing to instruct the jury (as requested by the defendant) on the subject of specific unanimity.[13] Acknowledging his counsel did not object after the judge's charge, the defendant also claims his trial counsel's failure to do so supports a claim of ineffective assistance of counsel. We disagree. We conclude that the judge's decision not to instruct on specific unanimity was not error, and therefore provides no basis on which to claim ineffective assistance of counsel. See *Commonwealth* v. *Kirkpatrick*, 423 Mass. 436, 442 (no due pro-

---

defendant made pursuant to subdivision (3) or (4) of Rule 9(a), and after taking into account the convenience of the court, the parties, and their witnesses, *may with the written approval of the prosecuting attorney in each division or county* order the transfer and consolidation for trial of any or all of the charges pending against the defendant in the several divisions or counties of the Commonwealth" (emphasis added).

[13]"[A] specific unanimity instruction indicates to the jury that they must be unanimous as to which specific act constitutes the offense charged." *Commonwealth* v. *Keevan*, 400 Mass. 557, 566-567 (1987).

cess violation where prosecutor was unable to provide specific dates or other identifying characteristics for multiple acts of child abuse by defendant over two-year period), cert. denied, 519 U.S. 1015 (1996).

A specific unanimity instruction is called for when, on a single charged offense, "the prosecutor presents evidence of separate, discrete incidents, any one of which would suffice by itself to make out the crime charged." *Commonwealth* v. *Santos*, 440 Mass. 281, 284-285 (2003). "There, in order to find the defendant guilty of the charged offense, the jury must all agree as to at least one, specific incident." *Id.* at 285, citing *Commonwealth* v. *Conefrey*, 420 Mass. 508, 513-514 (1995).[14] When the Commonwealth "introduces at trial evidence of alternate incidents that could support the charge against the defendant, the jury must unanimously agree on which specific act constitutes the offense charged." *Commonwealth* v. *Kirkpatrick*, 423 Mass. at 442.

In cases involving a resident child molester, as was alleged here, a specific unanimity instruction is not required where the victim testifies to a pattern of repetitive and abusive conduct by the defendant. See *ibid.* In such cases, the jury "are not offered a choice between discrete incidents of abuse to support a single charge," and thus the risk of a lack of unanimity dissipates. *Ibid.* Instead, when "the decisive issue at trial is the credibility of the complainant, a jury will either believe that a consistent and repetitive pattern of abuse has occurred, of necessity encompassing a number of discrete acts, or they will disbelieve it." *Ibid.* See *Commonwealth* v. *Sanchez*, 423 Mass. 591, 600 (1996); *Commonwealth* v. *Erazo*, 63 Mass. App. Ct. 624, 630-631 (2005).

The victim's testimony spoke in terms of a pattern of sexual abuse over more than two years by the defendant. She testified with ample detail of various distinguishable forms of abuse by him as well as multiple acts of natural and unnatural sexual intercourse, but her testimony "provided little basis for the prosecution to identify particular acts of abuse on which to

---

[14]The right to a specific unanimity instruction is derived from our common law and is not a constitutional requirement. See *Commonwealth* v. *Santos*, 440 Mass. at 287; *Commonwealth* v. *Walker*, 443 Mass. 213, 221 (2005).

focus its prosecution." *Commonwealth* v. *Kirkpatrick*, 423 Mass. at 443. Her testimony, which the jury found credible, established that she had been the victim of the crimes committed by the defendant. There was no risk of jury confusion here because the crimes arose from a repetitive pattern of sexual abuse, spanning more than two years, and not from discrete episodes or incidents of particular acts. There is no reasonable likelihood the jury would have reached a different result if a specific unanimity instruction had been given by the judge. See *id.* at 443-444; *Commonwealth* v. *Monzon*, 51 Mass. App. Ct. 245, 254-255 (2001) ("where the victim testifies to a pattern of repetitive and abusive conduct, of necessity encompassing a number of discrete acts, the danger of lack of unanimity in the jury's verdict does not exist, and no specific unanimity instruction is necessary").

b. *Fresh complaint testimony.*[15] The defendant claims error in the judge's refusal to give an instruction informing the jury that there was an absence of fresh complaint evidence. This contention lacks merit.

The judge was not required to give such an instruction, even if pressed to do so by the defendant. See *Commonwealth* v. *Licata*, 412 Mass. 654, 657-658 (1992); *Commonwealth* v. *Johnson*, 43 Mass. App. Ct. 509, 515 (1997). The defendant's proposed instruction speaks to an "outmoded and invalid notion" that a sexual assault victim will complain of an attack soon after it occurs. *Commonwealth* v. *Licata, supra* at 657-658. Our courts have been skeptical of such a notion, emphasizing that the absence of a fresh complaint does not necessarily imply the absence of a sexual assault. *Id.* at 658. See *Commonwealth* v. *King*, 445 Mass. 217, 230 (2005), and cases cited; *Commonwealth* v. *Howell*, 57 Mass. App. Ct. at 720 (identifying the

---

[15]Fresh complaint evidence is "an out-of-court [statement] seasonably made by the victim after a sexual assault" and is "admissible only to corroborate the complainant's testimony." *Commonwealth* v. *Licata*, 412 Mass. 654, 657 (1992). The Supreme Judicial Court recently reconsidered the scope of the fresh complaint rule and announced substantial changes to the doctrine. See *Commonwealth* v. *King*, 445 Mass. 217 (2005). The changes to the doctrine apply "prospectively to only those sexual assault cases tried after the issuance of the rescript in [the *King*] opinion," *id.* at 248, and we therefore analyze the defendant's claim on the basis of the doctrine as it existed at the time of the retrial.

reasons why a sexually abused child may not make a fresh complaint).

At the retrial, the defendant's counsel, in her closing argument to the jury and in her cross-examination of the victim and other witnesses, drove the point home to the jury that no fresh complaint had been uttered. It is unlikely this point was lost on them, and there was no need for the judge to address the issue further along the lines proposed by the defendant.

5. *Claims of error based on judge's conduct.* The defendant contends that the trial judge infringed his Federal and State constitutional rights to a fair trial by making gestures, such as rolling her eyes during the defense's closing argument, suggestive (he says) of her bias against him. The short answer to this claim is that the trial record does not support it. Defense counsel acknowledged that she did not personally observe any inappropriate facial expressions by the judge during her closing.[16] The judge who ruled on the defendant's motion for new trial determined, after hearing, that the affidavit provided by the defendant was self serving and not worthy of credit. Moreover, the trial judge's pointed instructions to the jury, directing them to disregard any notion of an opinion held by her respecting any aspect of the case or position taken by either party, were more than sufficient to cure any prejudice to the defendant. See *Commonwealth* v. *Johnson*, 429 Mass. 745, 752-753 (1999). It must be presumed that the jurors followed the judge's instructions. *Commonwealth* v. *Pope*, 406 Mass. 581, 588 (1990).

We are mindful that the trial judge, in performing her duties, must not be or appear to be partisan to either side of the case. See *Commonwealth* v. *Haley*, 363 Mass. 513, 518-519 (1973).

---

[16]At a meeting at sidebar after closing arguments, the following exchange between defense counsel and the trial judge occurred:

DEFENSE COUNSEL: "Judge, I haven't heard the charge, so I don't know if each judge does it differently. I don't know if you instruct the jury that just the evidence and not our statements, and nothing they may have taken from you, would suggest anybody has an opinion in the case other than the jury."

The COURT: "Why do you say that is necessary to bring that to my attention?"

DEFENSE COUNSEL: "Judge, two occasions I happen[ed] to stop in argument because I know that a particular juror was looking at your Honor. I don't know if they may have gotten something by — *I wasn't watching your Honor* . . . ." (emphasis supplied).

"Sitting with a jury, [she] should so conduct the trial that the case will go to the jury, so far as [her] lawful powers permit, free from irrelevant considerations and appeals to prejudice and emotion." *Id.* at 518, quoting from Lummus, The Trial Judge 19 (1937). The record does not support the claim that the judge here departed from that standard.

Nor is there anything to the defendant's complaint that the judge engaged in a sharp exchange with defense counsel in the presence of the jury. See *Roberts* v. *Southwick*, 415 Mass. 465, 474 (1993). The record does not demonstrate the judge acted in any untoward manner, toward the defendant or his trial counsel, in the presence of the jury.[17] His other claims of prejudicial or constitutional error arising from the allegedly admonishing tone in which the judge addressed defense counsel at certain points are overdrawn and not supported by the record.

In his new trial motion, the defendant also argued that the trial judge violated his State and Federal constitutional rights to be present at a "critical" stage of the trial. Following the jury verdicts, which were returned at approximately 2:25 P.M., the prosecutor asked for a delay in the proceedings to allow him to consult with the District Attorney.[18] The judge called for a brief recess, and the proceedings reconvened at 3:00 P.M. During the recess, the judge thanked the jury for their service, outside of the defendant's presence.[19]

---

[17]There was an instance during an individual voir dire of a prospective juror when the judge asked the defendant why he was shaking his head. The juror was later excused from serving on the jury. The judge requested that defense counsel have the defendant keep his body language to a minimum. In turn, defense counsel requested the judge not to admonish the defendant in front of the potential jurors, to which the judge responded that as long as the defendant's behavior was appropriate she would consider the request. Nothing can be made of this exchange.

[18]ASSISTANT DISTRICT ATTORNEY: "Your Honor, I have two problems. One is if I could have a little bit of time. The District Attorney is not in today, I believe there is a death in his family."

THE COURT: "Yes, I heard that."

ASSISTANT DISTRICT ATTORNEY: "Secondly, there is a second and subsequent issue on the indecent assault and battery charges. So he was indicted on a second and subsequent on others. And I have never done one of those before so I am at a loss."

[19]The judge stated: "I spoke with them and I thanked them. . . . I did not

The defendant claims that, as a result of the judge's ex parte communication with the jury, he unwillingly had to avail himself of a bench trial on the second and subsequent offense portion of the indictments, on the assumption the jury may have been unfairly prejudiced against him as a result of this ex parte meeting.[20] The claim fails because the defendant could have requested a short continuance and a different jury for the trial on the second and subsequent offense aspect of the case. He elected not to do so, but rather to proceed with a jury-waived trial.

A defendant is "entitled to be present at all critical stages of a criminal proceeding from arraignment to sentence" and at any proceeding where evidence is taken. *Commonwealth* v. *Owens,* 414 Mass. 595, 602 (1993). See Mass.R.Crim.P. 18(a)(3), 378 Mass. 887 (1979). However, "[e]xclusion of the defendant from communications between the judge and the jury may not mandate a new trial if it is shown that the error is 'harmless beyond a reasonable doubt.' " *Id.* at 603, quoting from *Chapman* v. *California,* 386 U.S. 18, 24 (1967). If there was a misstep here, it was undoubtedly harmless.

6. *Claim of error as to prosecutor's line of inquiry.* The defendant also claims error arising from the prosecutor's use of the phrase "prior hearing" in the course of direct examination of the Commonwealth's witnesses. There was no error. The prosecutor did so in a single instance, merely to refresh the witness's memory of her prior testimony before the grand jury. Defense counsel also made repeated use of this same phrase in cross-examination of more than one witness.

7. *Sentencing.* The defendant claims the sentences imposed by the trial judge, both individually as to the rape convictions,

for the record give them any indication — what I indicated to them is that they may have to wait. They asked me why, and I said I could not comment on that. I gave them absolutely no indication, and there were two court officers in the room, that there were any other proceedings planned against this defendant regarding his prior criminal activity."

[20]DEFENSE COUNSEL: "But, Judge, I am constrained to waive this jury. It may be that we'll go jury-waived on the second and subsequent portion. In fact, we're very likely to go jury-waived on the second and subsequent portion. But I — Judge, it is my job to preserve the record on my client's behalf. . . . So based on that I would have to waive this particular jury, this jury could not sit, I would suggest, on the second and subsequent portion of this case."

and collectively, by way of the twenty- to thirty-year concurrent sentences on the indecent assault and battery convictions, to run from and after the life terms, constitute cruel and unusual punishment, as proscribed by the Eighth Amendment to the United States Constitution and art. 26 of our Commonwealth's Declaration of Rights. In his view, the punishment imposed also "proves" the judge "very likely acted with prejudice" against him. We disagree.

The sentences imposed were lawful and within the statutory limits. The judge adopted the prosecutor's recommendation, rejecting the defendant's request for punishment in line with the sentencing guidelines. In doing so, she properly considered relevant factors surrounding the case.[21] A judge "has considerable latitude within the framework of the applicable statute to determine the appropriate individualized sentence." *Commonwealth* v. *Goodwin*, 414 Mass. 88, 92 (1993).[22] It is not in this court's power to vacate or modify an otherwise lawful sentence, so long as it has been administered impartially, based on the relevant criteria. *Commonwealth* v. *Coleman*, 390 Mass. 797, 804 (1984). That is the case here. Action along this line is reserved to the Appellate Division of the Superior Court. See G. L. c. 278, §§ 28A-28C. See also *Commonwealth* v. *Baldwin*, 52 Mass. App. Ct. 404, 409 (2001).

8. *Ineffective assistance.* In addition to the claims addressed above, the defendant argues his trial counsel was ineffective for allegedly refusing to honor the defendant's request to testify. We disagree.

---

[21]The defendant properly does not argue that the statutory punishment of life imprisonment for rape of a child itself constitutes unconstitutional punishment. Rather he argues that the cumulative effect of the sentences is the imposition of a sentence awarded for the crime of murder.

[22]The judge is permitted to consider extrinsic facts, such as the defendant's background, character, or behavior. The judge obviously can consider prior offenses as well as the danger a given defendant may pose to society. See *Commonwealth* v. *Morrow*, 363 Mass. 601, 611-612 (1973). Among other factors, when the defendant committed the offenses here against his stepdaughter, he was on parole for a prior conviction of indecent assault and battery of a child under the age of fourteen. His stepdaughter submitted a written statement as to the ill effects of the abuse, see G. L. c. 258B, § 3(*p*), in which she described the harm she had to endure at a tender age. The judge could take that into account in sentencing. Compare *Commonwealth* v. *Mills*, 436 Mass. 387, 400-401 (2002).

"The right to testify on one's behalf in a criminal case is fundamental." *Commonwealth* v. *Degro*, 432 Mass. 319, 335 (2000). However, "[u]nlike most other rights, the right to testify is counterpoised by the right not to testify." *Commonwealth* v. *Waters*, 399 Mass. 708, 716 (1987). The decision whether to testify at trial "is an important strategic decision made by the defendant with the advice of counsel." *Id.* at 716. It must be intelligently and voluntarily made, with "sufficient awareness of the relevant circumstances and likely consequences." *Commonwealth* v. *Freeman*, 29 Mass. App. Ct. 635, 640 (1990), quoting from *McMann* v. *Richardson*, 397 U.S. 759, 766 (1970).[23]

After hearing evidence on the new trial motion, the judge made detailed findings of fact and concluded that the defendant had knowingly, voluntarily, and intelligently elected to forgo his right to testify, a decision he made with the advice of his counsel. The judge's findings and ultimate conclusion are supported by the record.

The trial judge was not required to engage in a colloquy with the defendant to determine whether the latter had relinquished that right in a constitutional sense. See *Commonwealth* v. *Moore*, 52 Mass. App. Ct. 120, 124 (2001). There is a risk in engaging in such a colloquy, for it might be later said that, by informing a defendant of the right to testify, the judge had "cast in unflattering light" the defendant's right not to testify. *Commonwealth* v. *Hennessey*, 23 Mass. App. Ct. 384, 390 (1987).[24]

The motion judge's ruling as to this claim is not clearly erroneous and must stand. We add only that the defendant was not unfamiliar with the trial process, and had elected not to testify in the earlier proceedings. His trial counsel's advice, at the retrial, was not manifestly unreasonable. His counsel's performance did not fall "measurably below that which might be expected from an ordinary fallible lawyer," and no credible showing has been made that it likely "deprived the defendant

---

[23]Often, this decision must be made as the evidence unfolds at trial. See *Commonwealth* v. *Waters*, 399 Mass. at 716.

[24]A preferable course of action is outlined in *Commonwealth* v. *Waters*, 399 Mass. at 717 n.3.

of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974).

>    *Judgments of conviction
>        affirmed.*
>
>    *Order denying motion for new
>        trial affirmed.*